HELEN HIGDON AND ROBERT HIGDON JOINTLY, AND
ROBERT HIGDON, INDIVIDUALLY, PLAINTIFFS, v.
ISABELLE BONING, DIRECTOR OF WELFARE, FRANK-
FORD TOWNSHIP, DEFENDANT.

Sussex County Juvenile & Domestic Relations Court

Decided November 6, 1972.

*Mr. Bruce LaCarrubba,* for plaintiff (*Mr. James B. Ventantonio,* Director Somerset-Sussex Legal Services, Sussex Office, attorney).

*Mr. Richard Hughes,* for defendant (*Messrs. Silverman and Hughes,* attorneys).

BARRY, J. C. C. Plaintiff Robert Higdon, 42 years of age, is suffering from cerebral palsy. He has so suffered during his entire life. He is permanently disabled from the effects of this disease. He resides at home with his mother, Helen Higdon, 74 years of age, in Frankford Township and has so resided for the past 11 years.

On December 1, 1971 plaintiffs applied to the Sussex County Welfare Board for assistance for Robert. The results of this application, the hearing on the appeal from that determination and the subsequent reapplication of September 8, 1972 were all in the negative. The reason for the denials was that Robert's income, derived from two sources, exceeded the standards set by the State of New Jersey Public Assistance System, which establishes guidelines for welfare boards. Subsequent to these denials plaintiffs applied to Isabelle M. Boning, Director of Welfare of Frankford Township, for as-

sistance as needy persons under *N. J. S. A.* 44:8–107 to 145. This application was denied on the grounds that plaintiff Robert Higdon did not qualify under section 122 of the law (*N. J. S. A.* 44:8–122) and that he was entitled to the benefits sought from the Sussex County Welfare Board. Therefore, defendant was under no obligation to render any assistance to plaintiffs. The sole issues before this court are: (1) whether Robert Higdon qualifies under section 122 of the General Public Assistance Law, *N. J. S. A.* 44:8–107 to 145, and (2) whether Frankford Township is obligated to render assistance under this law.

In order to make a determination as to whether plaintiff Robert Higdon is needy under this act, inquiry must be made as to his income and expenses, and as to the cost of the treatment necessary to make him a functional asset to society. Robert Higdon receives $169.70 a month as Social Security benefits and $30 per month from the Veterans Administration. This latter sum represents a portion of a total payment of $98.06 paid directly to Helen Higdon by the Veterans Administration, but according to the latter, allocated for plaintiff Robert's needs. Robert's living expenses for medication, food, milk, clothing and miscellaneous total $130, leaving a weekly surplus of $16.20.

Uncontroverted testimony shows that Robert is in need of physical therapy. A denial of this therapy would result in both emotional and physical suffering, and such denial would destroy him physically and mentally. Both Dr. Varroney and Dr. Spears stipulated the need for an audiological examination of Robert. Dr. Spears further testified that Robert needs neurological reevaluation as to adjustment of his anti-convulsant medication on a monthly basis at a hospital or by an area physican. The total cost of the proposed treatments is $70 a week. Applying Robert's weekly income-expenses surplus of $16.20 to this figure reduces the necessary sum to $54.80 a week. Plaintiff contends that in order to alleviate his immediate suffering these treatments must be made available.

*N. J. S. A.* 44:8–122 provides that a director of welfare

* * * shall render such aid and material assistance as he may in his discretion, after reasonable inquiry, deem necessary to the end that such person may not suffer unnecessarily, from cold, hunger, sickness, or be deprived of shelter pending further consideration of the case.

During the trial, defendant did not rebut plaintiffs' proofs as to Robert's being needy and in need of immediate assistance. Defendant in her post-trial brief feels that this assistance, "which is in the nature of sophisticated treatment, violates the tenor and intendment of the act we have been discussing." This court does not agree. The statute states specifically in section 122 (*N. J. S. A.* 44:8–122) that such needy person may not suffer unnecessarily from sickness. Section 124 (*N. J. S. A.* 44:8–124) would allow assistance in the form of medical care. Certainly defendant cannot expect the statute to list every sickness or disease for which the statute was intended to provide relief. This is not the case of a person needing a heart transplant or the use of an expensive kidney machine, either of which might be "sophisticated treatment," as defendant suggests. (But the statute neither expressly nor impliedly excludes any sickness or disease for which a needy person might receive assistance.) Plaintiff seeks physical therapy which comprises almost half of the estimated $70 he asserts will relieve his suffering. The term "physical therapy," as defined in *Loman's Lawyers' Medical Cyclopedia,* is used to indicate the use of a variety of physical means in treatment. These include water, light, heat, electricity, remedial exercises and manual applications such as massage. In light of the testimony elicited at trial this court is not inclined to accept defendant's position that the physical therapy sought by plaintiff is not within the purview of the General Public Assistance Law, *N. J. S. A.* 44:8–107 to 145.

Furthermore, defendant in her brief admits that assistance should be rendered by municipalities in certain circumstances, but that such assistance must be of a nature

designed only to preserve life and limb until other arrangements can be made. This reasoning, however, does not meet the standards of concern for which the Legislature enacted this law. Notwithstanding, uncontradicted testimony by Dr. Varroney at the trial of this matter was that a denial of the needed therapy would result in both emotional and physical suffering for Robert and would destory him physically and mentally. For this court to rule that Robert did not qualify for assistance under the act would be abhorrent in light of the clear intent of the Legislature in passing this statute.

Defendant's second contention, that Frankford Township is not obligated to afford assistance to plaintiffs, is equally without merit. At no time throughout this entire proceeding has defendant attempted to rebut plaintiffs' proof of the existence of need. Indeed, the only argument put forward by defendant as to the applicability of *N. J. S. A.* 44:8–107 to 145 was her contention that the treatment and other assistance sought by plaintiffs was so sophisticated as not to be within the purview of the law. This contention has heretofore been considered by the court.

Defendant at the trial and in her post-trial brief relies primarily upon *N. J. S. A.* 44:8–108, in its definition of "public assistance," for the contention that Frankford Township is not legally obligated to render assistance to plaintiffs. This assertion is based upon the contention that plaintiff is eligible for benefits from the Sussex County Welfare Board, which benefits would greatly exceed any assistance obtainable from the township. Defendant bases this contention upon the allegation that plaintiffs' application for assistance to the Sussex County Welfare Board was improperly denied and that therefore there is assistance provided otherwise under the laws of the State. See *N. J. S. A.* 44:8–109. This matter, however, is not before the court. Plaintiffs applied to the Sussex County Welfare Board for assistance in December 1971. The application was denied

as the board determined that Robert Higdon's income exceeded the maximum income level established for assistance eligibility under this program. Plaintiff appealed this decision to the Department of Institutions and Agencies, which decided that the Sussex County Welfare Board made a determination "consistant with official standards and regulations," thus affirming the Welfare Board's finding. Plaintiff reapplied for this same assistance on September 8, 1972 which reapplication was also denied. If it is defendant's contention that plaintiff must look behind the Sussex County Welfare Board's ruling as well as the ruling of the Department of Institutions and Agencies to ascertain the reasoning behind their decisions, this court does not agree that plaintiffs should be so burdened. Perhaps an alternative would have been to appeal these rulings to the appropriate court, but this court will not decide that question as it is not properly before it. The Sussex County Welfare Board is not a party to these proceedings.

Plaintiffs contend that the burden to relieve the needy is primarily on the municipality; indeed their case rests on this point. This court agrees with their contention. *N. J. S. A.* 44:8–109 declares that the public policy of this State is that

every needy person shall, while in this State, be entitled to receive such public assistance as may be necessary, and that the furnishing of such public assistance *is primarily the duty of the municipalities* and of civic and charitable organizations but that all needy persons not otherwise provided for under the laws of this State shall hereafter receive public assistance pursuant to law and the provisions of this act. [Emphasis added]

"Public assistance," as used in this law, is defined in *N. J. S. A.* 44:8–108 as

* * * assistance rendered to needy persons not otherwise provided for under the laws of this State, where such persons are willing to

work but are unable to secure employment due either to physical disability or inability to find employment, and includes what is commonly called "relief" or "emergency relief".

Though the rendering of such aid is left to the discretion of the Director of Welfare, the assistance obtainable under the act is mandatory, "to the end that such person may not suffer unnecessarily, from cold, hunger, sickness * * *." *N. J. S. A.* 44:8–122.

The public policy declared in *N. J. S. A.* 44:8–109 reflects the Legislature's concern for the alleviation of human suffering and the recognition of a certain basic human dignity which it is the duty of society to foster and preserve. It is clear, from a reading of the General Public Assistance Law, *N. J. S. A.* 44:8–107 to 145, that this legislative intent was to make certain that the needy should not suffer unnecessarily from the burdens of sickness. Historically, this burden has been primarily on the municipality as a matter of public policy.

In light of the uncontroverted needs of plaintiff Robert Higdon, his undisputed inability to pay for these needs, and a finding by this court that he is a person "not otherwise provided for under the laws of the State," this court finds that defendant improperly construed the provisions of the General Public Assistance Law in denying assistance to plaintiff. Defendant should have made the inquiries set forth in *N. J. S. A.* 44:8–121 and rendered immediate aid pursuant to the provisions of the act.

Judgment for plaintiff in the amount of $54.80 a week, to provide physical therapy, visiting homemaker services for daily living needs, and weekly treatment by Dr. Varronney. Defendant will also assume the cost of the monthly seizure control treatment and an audiological evaluation and, pending the outcome of the latter, will provide funds for occupational and speech therapy if needed. Homemaking services supplied by visiting Homemaker Services of Sussex County,

Inc., from June 19, 1972 to October 16, 1972, at the rate of $3 an hour, totaling $312 were afforded and have not been paid. The court directs this sum to be paid by defendant forthwith.

This matter will be held open so that a further hearing may be had, if the parties desire it, on the need and cost of such occupational and speech therapy.